UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| AAA WHOLESALERS : <br> DISTRIBUTION, LLC, a : <br> Rhode Island limited liability company, : <br> and ARISMENDY DISLA, as an : <br> individual and President and Owner : <br> of AAA WHOLESALERS : <br> DISTRIBUTIONS, LLC., : <br>     Plaintiffs, : <br> : <br> v. : <br> : <br> TROPICAL CHEESE INDUSTRIES, INC., : <br>     Defendant. : | C.A. No. 18-542WES |

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge.

On September 28, 2018, Plaintiffs AAA Wholesalers Distribution, LLC ("AAA"), and Arismendy Disla, AAA's owner and President, initiated this action against Defendant Tropical Cheese Industries, Inc. ("Tropical"); their verified complaint is signed by Mr. Disla. AAA and Tropical are business rivals that intensely competed in the sale and distribution of cheese and dairy products to grocery markets, particularly Spanish markets and smaller specialty markets. ECF No. 1 ¶¶ 10-13. AAA was a leading importer/exporter of a full line of food products, at one time the only full-line Mexican food redistributor in the nation. Id. ¶ 11. Tropical's business is more focused; it manufactures and sells cheese and other dairy products. Id. ¶ 4. AAA ceased all operations in April 2016. Id. ¶ 23. It blames Tropical for its demise. Id. ¶¶ 23, 28.

This is the second case in this Court between AAA and Tropical.[1] In the first case, filed in September 2015, Tropical sued AAA and one of its employees (not Mr. Disla) for breach of

---

[1] The first case was captioned Tropical Cheese Industries v. Castillo, C.A. No. 15-410WES, and is referred to as Tropical I.

contract, unfair competition and tortious interference; as to AAA; the first action was voluntarily dismissed. Id. ¶ 14. In the present case, AAA (and Mr. Disla, its owner/President) are suing Tropical. They allege that Tropical's business practices caused AAA's loss of business, leading to its April 2016 demise, and caused Disla to suffer severe emotional distress. Their Verified Complaint advances four causes of action. In Count I, AAA and Mr. Disla both allege Defamation/False Light; Mr. Disla alone claims Intentional Infliction of Emotional Distress in Count II; both assert Tortious Intentional Interference with a Contractual Relationship in Count III and Abuse of Process (based on the filing of Tropical I) in Count IV.

Tropical has filed a motion to dismiss. ECF No. 11. Grounded in Fed. R. Civ. P. 12(b)(6), and invoking Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), Tropical's motion challenges the sufficiency of the claims in Counts I and II.[2] It argues that defamation and false-light publicity as charged in Count I rely entirely on conclusory allegations that cannot clear the Twombly/Iqbal bar, as well as that some, if not all, of the defamation is beyond Rhode Island's one-year statute of limitations for words spoken (R.I. Gen. Laws § 9-1-14(a)). Similarly, Count II, in Tropical's view, is defective because Mr. Disla's claim of emotional distress tracks the language of the legal elements but lacks a single fact to render plausible the existence of the essential element (under Rhode Island law) of a physical manifestation of symptoms.

In response, Plaintiffs contend that many of the utterances in Count I occurred within one year prior to the Verified Complaint and that those that did not are saved by the continuing tort doctrine; they also contend that some of the actionable utterances amount to non-verbal defamation, which they contend is covered by the default (three-year) statute of limitations in

---

[2] Originally, the motion also challenged Count IV; Tropical abandoned those arguments in its reply. ECF No. 20 at 7 n.3.

R.I. Gen. Laws § 9-1-14(b). As to Count I's factual sufficiency, Plaintiffs brush aside Twombly/Iqbal, arguing that they need not be as specific as Tropical wants. Mr. Disla defends Count II with the argument that he has put in enough regarding his physical symptoms. Plaintiffs alternatively request leave to amend the Verified Complaint.[3]

Tropical's Fed. R. Civ. P. 12(b)(6) motion has been referred to me for report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, I recommend that the motion be granted.

I. BACKGROUND[4]

In 2005, Mr. Disla established AAA, a business that sold and distributed a full line of food products, including cheese and dairy, to Spanish groceries in the United States. ECF No. 1 ¶¶ 3, 7, 10, 11. At one time, AAA was the nation's only full-line Mexican food distributor; its gross revenue exceeded $2 million between the "approximate years 2015 and 2017." Id. ¶¶ 8, 11. Tropical is AAA's direct competitor in serving the needs of Spanish grocery stores for

---

[3] At the hearing, the Court focused on Plaintiffs' alternative prayer that the motion to dismiss be tabled so that they can amend. The suggestion raises troubling concerns. First, Plaintiffs have been aware of Tropical's arguments since the motion was filed in January 2019, almost nine months ago, yet have not filed an amended complaint. Indeed, they could have amended as of right at any time for twenty-one days after the motion exposed the Verified Complaint's deficiencies, but they did not act. See Fed. R. Civ. P. 15(a)(1)(B). Second, an amendment might well be denied due to the prejudice caused by this delay, particularly where the gravamen of the challenged claims is the words spoken by Tropical's employees – the Rhode Island General Assembly set a short statute of limitations for such a claim precisely because of the prejudice to the person or entity accused of such ephemeral misconduct caused by delay. Third, the Court (and Tropical) still have no amended complaint to consider as our Local Rules strictly require; therefore, its potential futility cannot be tested. DRI LR Cv 15. Based on these concerns, I have proceeded to address the pending motion to dismiss. If Plaintiffs move to amend, that motion will be addressed in due course.

[4] This background statement comes from Plaintiffs' Verified Complaint, as well as from the public record of Tropical I, to which the Verified Complaint refers. See Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (court ruling on Fed. R. Civ. P. 12(b)(6) motion may consider "documents the authenticity of which are not disputed . . . official public records . . . [and] documents central to plaintiffs' claim"). The background statement assumes the truth of all of the Verified Complaint's facts, as well as that all inferences are drawn in favor of Plaintiffs.

cheese and dairy products. Id. ¶¶ 12-13. AAA ceased operations in April 2016[5] because of Tropical's unfair practices. Id. ¶ 23.

On September 29, 2015, while AAA was still operating, Tropical filed a lawsuit against AAA and Alejandro Castillo, a AAA employee who formerly worked for Tropical. Id. ¶ 14; see Tropical I, ECF No. 1. Tropical's lawsuit claimed Mr. Castillo violated a non-compete agreement he had signed with Tropical, and that he was sharing Tropical's trade secrets with his new employer, AAA. Tropical I, ECF No. 1. In its complaint, Tropical alleged breach of contract against Mr. Castillo, as well as unfair competition and tortious interference with contractual relationships as to Mr. Castillo and AAA. Id. Because Mr. Castillo failed to appear, the Court entered default judgment against him on June 21, 2016. Tropical I, ECF No. 19. On February 1, 2017, the Court dismissed all claims against AAA based on Tropical's December 30, 2016, unobjected-to filing of a motion for voluntary dismissal. ECF No. 53. Mr. Disla was not named as a party in Tropical I, nor does his name appear in the Tropical I complaint. Tropical I, ECF No. 1.

In the instant case, Plaintiffs' allegations against Tropical focus on the approximate time period of 2015 to 2017. See Compl. ¶ 16. To the extent that the Verified Complaint alleges facts involving AAA, it claims that Tropical's representatives "interacted" with "established and potential customers of the Plaintiffs" for the purpose of luring business away from AAA. Id. These interactions included Tropical's representatives "citing the fact that [AAA] was being sued [in Tropical I] as a reason not to purchase products from AAA." Id. Plaintiffs further allege that Tropical's representatives engaged in competitive dirty tricks, including "inducing [AAA's]

---

[5] Because of its criticality to the issues raised by the pending motion, during the hearing, the Court pressed Plaintiffs' counsel on this date, which Mr. Disla had verified under oath. Counsel confirmed that this date came from Mr. Disla and is not a typographical error, but advised that, conceivably, Mr. Disla might alter it in an amended pleading. See n.3, supra.

4

customers to allow Defendant to scrutinize invoices, and reveal other propriety information, in an effort to undercut the Plaintiffs' prices and service/sales methods"; physically manipulating the presentation of Plaintiffs' products in grocery locations so potential customers could not find AAA's items; and moving AAA's sales material and other signage, replacing them with Tropical's. Id. ¶¶ 17, 19, 20. Plaintiffs claim (on information and belief) that Tropical's representatives offered cash incentives and free products to Plaintiffs' customers in exchange for testimony against AAA in Tropical I. Id. ¶ 21. Due to Tropical's "unfair practices," "Plaintiffs lost business relationships with clients, customers, investors, banking relations and like contacts, many of which were built over a decade." Id. ¶ 22. Tropical's practices forced AAA to cease its operations in April 2016; prior to that time, AAA's business extended throughout the United States and to approximately thirty other countries. Id. ¶¶ 9, 23, 28.

For his claims, Mr. Disla alleges that Tropical's "statements" were made intentionally to demean and falsely reflect on him, his professional acumen and reputation, giving the public a misleading impression of him as unreliable and untrustworthy. ECF No. 1 ¶¶ 26-29. He claims that the defamation and false light publicity caused him to be shocked, humiliated, and to endure pain and suffering and emotional distress, "with resulting physical and emotional manifestations." Id. ¶ 32. He also alleges that this "extreme and outrageous conduct" was intentional for the purpose of inflicting severe emotional distress. Id. ¶¶ 35-36. To support his claim for infliction of emotional distress, Mr. Disla further describes this "conduct" as "outrageous," "atrocious and egregious," "beyond all possible bounds of decency and . . . utterly intolerable in a civilized community." Id. ¶ 37. He claims he has "suffered severe emotional distress. Id. ¶ 39.

## II.     STANDARD OF REVIEW

To avoid foundering in the face of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege a plausible entitlement to relief that gives the defendant fair notice of the claim and the grounds on which it rests. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555, 559. The plausibility inquiry requires the court to distinguish "the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012).

This two-pronged approach begins by identifying and disregarding statements in the complaint that merely offer "'legal conclusion[s] couched as . . . fact[ ]'" or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 1949-50 (quoting Twombly, 550 U.S. at 555). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). The Court must determine whether the well-pled facts, taken as true, are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678). In doing so, the complaint should be read holistically with a heavy dose of common sense. Rodriguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 283-84 (1st Cir. 2014). Because this is a diversity case, Rhode Island law provides the substantive rules of decision. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

## III. LAW AND ANALYSIS

### A. Count I: Defamation/False Light

Under Rhode Island law, "[t]he elements of a cause of action for defamation are: (1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence (or reckless disregard

for public figures); and (4) damages." U.S. ex rel. Vasudeva v. Dutta-Gupta, No. CA 11-114 ML, 2014 WL 6811506, at *9 n.8 (D.R.I. Dec. 2, 2014) (citing Alves v. Hometown Newspapers, Inc., 857 A.2d 743, 751 (R.I. 2004)). "A false statement is defamatory if, 'in the context of the publication in which [it] appear[s],' and according to its 'plain and ordinary meaning in the community in which [it is] published,' the statement 'tends to degrade [the plaintiff] in society or bring [the plaintiff] into public hatred and contempt.'" RainSoft v. MacFarland, 350 F. Supp. 3d 49, 57 (D.R.I. 2018) (quoting Swerdlick v. Koch, 721 A.2d 849, 860 (R.I. 1998)) (alterations in original). A plaintiff in a defamation action carries a substantial burden. Alves, 857 A.2d at 750. When a defamation claim hinges on "words spoken," the statute of limitations is one year, and "not after." R.I. Gen. Laws § 9-1-14(a); Sola v. Leighton, 45 A.3d 502, 506 n.6 (R.I. 2012). By contrast, the three-year statute of limitations relating to injuries to the person is applicable to an action for written defamation. Mikaelian v. Drug Abuse Unit, 501 A.2d 721, 724 (R.I. 1985) ("'words spoken' do not include written material").

Rhode Island law also creates a cause of action for false light, which may be asserted by an individual like Mr. Disla: R.I. Gen. Laws § 9-1-28.1(a)(4) provides that, "every person in this state shall have a right to privacy which shall be defined to include . . . [t]he right to be secure from publicity that reasonably places another in a false light before the public" . . . [through] "some publication of a false or fictitious fact which implies an association which does not exist." See Alves, 857 A.2d at 751-52 ("allegation that an individual has been portrayed in a false light is an instance of a violation of the more general right to privacy"). Distinct from defamation, false light requires proof "that a plaintiff be given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." Cullen v. Auclair, 809 A.2d 1107, 1112 (R.I. 2002). For a

7

plaintiff properly to state a cause of action for false light, he or she must prove that "there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable [person] in his [or her] position." Alves, 857 A.2d at 752; see Clements v. WHDH-TV, Inc., No. WC97-012, 1998 WL 596759, at *4 (R.I. Super. Aug. 27, 1998) (dismissing false light claim that failed to allege "publication of a false or fictitious fact").

Count I of the Verified Complaint does not allege that there are any actionable statements that are in writing. Rather, it is entirely limited to allegations based on verbal utterances and conduct. Further, the pleading provides the Court with no content for any of these utterances or statements and no expression of words to give meaning to any of the conduct, with the exception of the reference to Tropical's representatives "citing the fact that the Plaintiffs were being sued by Tropical Cheese as a reason not to purchase products from AAA."[6] ECF No. 1 ¶ 16. Otherwise, the Verified Complaint is limited to vague and conclusory characterizations – "false and misleading statements" (¶ 25), "statements which invaded Plaintiff Disla's privacy" (¶ 29) and "[c]onduct . . . to demean and falsely reflect on Plaintiff Disla, his professional acumen, and AAA" (¶ 27) – that are hopelessly inadequate to render plausible a claim of defamation that meets the rigorous standard of Rhode Island law. See Alves, 857 A.2d at 750 (without regard to whether claimant is public official, defamation plaintiff "carries substantial burden"). Nor is there any factual content to test the viability of Mr. Disla's false light claim, which requires at a minimum a plausible articulation of publicity based on the "publication of a false or fictitious

---

[6] Tropical argues that claims based on this alleged statement must be dismissed because the fact that Tropical I was pending is true. Plaintiffs correctly point out that truth is not an absolute defense to defamation. Johnson v. Johnson, 654 A.2d 1212, 1215 (R.I. 1995) ("while truth is a defense, if it is uttered maliciously, it is then actionable"). I do not recommend dismissal as to this statement based on the anticipated affirmative defense of truth.

8

fact," which must amount to a "major misrepresentation of [plaintiff's] character, history, activities or beliefs." See R.I. Gen. Laws § 9-1-28.1(4); Alves, 857 A.2d at 752.

The decisions in this District and elsewhere that have considered a Fed. R. Civ. P. 12(b)(6) challenge to similarly vaguely-worded claims effectively alleging no more than that statements are defamatory all come to the same conclusion – such conclusory pleading is insufficient. See, e.g., Bogosian v. R.I. Airport Corp. (T.F. Green Airport), C.A. No. 17-16S, 2017 WL 9324764, at *6 n.10 (D.R.I. May 3, 2017) (failure to describe content of libel is "an independent ground to dismiss the defamation claim"); Dutta-Gupta, 2014 WL 6811506, at *9 (defamation claim based on no more than "conclusory assertions that [defendants] defamed [them]" dismissed); see Tuckerbrook Alt. Invs., LP v. Banerjee, Civil Action No. 12-11643-GAO, 2014 WL 4965739, at *2-3 (D. Mass. Sept. 30, 2014) (dismissing defamation claim based on threadbare labels and conclusions indicating someone "made many disparaging remarks" and "continually and repeatedly made misstatements, misrepresentations, and outright lies"). The same is true for false light claims. E.g., Ferreira v. Child & Family Servs. of R.I., No. NC-2017-0330, 2018 WL 3085185, at *1 n.3 (R.I. Super. June 13, 2018) (false light claim dismissed because it "failed to allege that CFS published any facts concerning Mr. Ferreira's character, conduct or beliefs that were false, nor were there any allegations that would imply an objectionable association or objectionable publicity"). Except for AAA's defamation claim based on the utterances about Tropical I (discussed *infra*),[7] my recommendation is that Twombly/Iqbal requires that all of the Count I claims must be dismissed.

---

[7] The allegation in ¶ 16 about Tropical I may be plausible as stating a defamation cause of action by AAA, but not by Mr. Disla. Mr. Disla was not joined in Tropical I and his name does not appear in the Tropical I complaint. ECF No. 1 ¶ 14. Although ¶ 16 alleges that "**Plaintiffs** were sued" (emphasis supplied), that wording is contradicted by ¶ 14, which states that AAA and its employee (Castillo) were sued, which is confirmed by the public record in Tropical I. Further, the ¶ 16 statement is allegedly defamatory because of the linkage between the pendency of Tropical I and not purchasing "products from AAA." Id. ¶ 16. Any injury to Mr. Disla is indirect, based on his ownership of AAA.

9

With no allegations permitting the inference that any of the actionable statements or utterances were made in writing, Plaintiffs' defamation claims are also vulnerable to the "words spoken" one-year statute of limitations in R.I. Gen. Laws § 9-1-14(a). Although the Verified Complaint is silent as to timing of the alleged statements, the pleading supplies two anchors – the end of Tropical I (February 2017) and cessation of AAA's operations (April 2016). Plaintiffs fail to explain how defamation based on statements about Tropical I[8] could be plausible once Tropical I was voluntarily dismissed, which occurred more than a year and a half before this case was filed. And all of the allegations regarding conduct and statements directed towards AAA relate to injuring it as an operating business entity; because it ceased operations more than two years before this action was filed, it is utterly implausible to posit that statements that caused it to cease operating were uttered after it had already ceased operating.[9] In particular, if the Court were to deem the statement suggesting that AAA customers should not purchase from AAA due to the pendency of Tropical I as amounting to plausible defamation (ECF No. 1 ¶ 16), it must also conclude that the claim is barred because such "words spoken" were necessarily uttered more than two years before this case was commenced, at a time when customers could still opt to purchase from AAA, as well as that they were uttered more than a year and half before this case was commenced, at a time when Tropical I was still pending. Thus, the Verified Complaint makes clear that AAA's defamation claim is subject to dismissal in its entirety based on the

---

[8] The pleading clearly alleges that the statements about Tropical I are grounded in the premise that "Plaintiffs were being sued" – that is, these statements were made while AAA was being sued by Tropical, a state of affairs that ended in February 2017.

[9] To illustrate, the Verified Complaint alleges that Tropical's representatives induced AAA's customers not to purchase AAA products, persuaded AAA's customers to allow Tropical to look at AAA's invoices and moved AAA's signs and products. Apart from the implausibility of construing most of these allegations as "utterances," all of these activities necessarily happened while AAA was actively invoicing customers, selling and placing its products on shelves and posting its signs, which operations ceased more than two years prior to the filing of this case.

"words spoken" statute of limitations. And Mr. Disla's defamation claim may survive only if grounded in allegations of factually plausible defamatory statements uttered after September 27, 2017; as pled, the Verified Complaint is devoid of any such allegations.

Plaintiffs strive to overcome the statute-of-limitations bar with two arguments. Neither is availing.

First, without citation to any authority for the proposition, Plaintiffs contend that Count I relies in part on defamatory "conduct" and that the three-year statute of limitations in R.I. Gen. Laws § 9-1-14(b) is applicable to that aspect of the claim. This argument fails in the face of the clarity of the Rhode Island Supreme Court cases, which unambiguously establish a "statement" or "utterance" (spoken or written) as the foundational element of the tort. See, e.g., Burke v. Gregg, 55 A.3d 212, 218 (R.I. 2012); Cullen, 809 A.2d at 1110. Under Rhode Island law, defamatory statements are "words." Mills v. C.H.I.L.D., Inc., 837 A.2d 714, 720 (R.I. 2003); see Reid v. Providence Journal Co., 37 A. 637, 638 (R.I. 1897) (defamation requires false and malicious "words"). The same is true for false light. See, e.g., Alves, 857 A.2d at 751 ("whether a statement portrays an individual in a false light") (emphasis added). Thus, conduct can be defamatory only when it amounts to an expression of words. Allstate Ins. Co. v. Russo, 641 A.2d 1304, 1307 (R.I. 1994) ("manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts"); see Krochalis v. Ins. Co. of N. Am., 629 F. Supp. 1360, 1369 (E.D. Pa. 1985) (applying Pennsylvania law, nonverbal conduct may be defamatory if it "was capable of defamatory meaning"). To the extent that "conduct" is a surrogate for "words," it also has the same ephemeral quality of "words spoken," which is the focus of R.I. Gen. Laws § 9-1-14(a), rather

11

than the permanence of a writing, which is covered by the more generous limitation period in R.I. Gen. Laws § 9-1-14(b). Therefore, the former statute of limitations remains applicable.

Alternatively, Plaintiff argues that unspecified aspects of Tropical's conduct continued after September 27, 2017, and that the continuing tort doctrine saves the defamation claims barred by R.I. Gen. Laws § 9-1-14(a). This argument is contrary to settled Rhode Island law that a cause of action based on a defamatory utterance accrues "when the allegedly defamatory words were spoken." Austin v. Carden, 818 A.2d 662, 664 (R.I. 2003). "Courts almost universally decline to apply the doctrine [of continuing tort] in defamation cases." Knowlton v. Shaw, 708 F. Supp. 2d 69, 77-78 (D. Me. 2010), aff'd, 704 F.3d 1 (1st Cir. 2013) (alteration in original); Murphy v. Maine, No. CV-06-62-B-W, 2006 WL 2514012, at *5 (D. Me. Aug. 29, 2006) (collecting cases). This is because "each separate defamatory statement itself constitutes a separate and distinct cause of action." Murphy, 2006 WL 2514012, at *5. Statements placing a person in a false light function the same way, each statement forming the basis for a separate claim. See Alves, 857 A.2d at 751-52. The Rhode Island Supreme Court's guidance is consistent in that it has made clear that the continuing tort doctrine is intentionally limited in application: "review of our caselaw reveals that we have only applied the continuing tort doctrine only once, in the context of claims for conversion and unjust enrichment." Boudreau v. Automatic Temperature Controls, Inc., No. 2018-91-Appeal. (PC 16-3609), 2019 WL 2528577, at *6 (R.I. June 20, 2019) (when conduct complained of is "discrete act," "ongoing injuries" or "harmful effects" may not extend the limitations period). I do not recommend that the Court apply the continuing tort doctrine to the defamation claims in this case.

### B. Count II: Intentional Infliction of Emotional Distress

"To prove intentional infliction of emotional distress, the plaintiff must allege and prove that the defendant intentionally or recklessly engaged in extreme and outrageous conduct, resulting in the plaintiff's severe emotional distress." Francisco v. U.S. Marshalls Serv., No. CA 11-231L, 2014 WL 652147, at *11 (D.R.I. Feb. 19, 2014) (quoting Wright v. Zielinski, 824 A.2d 494, 499 (R.I. 2003)); see Marques v. Fitzgerald, 99 F.3d 1, 7 (1st Cir. 1996). An essential element of such a claim is that the plaintiff must "allege and prove that medically established physical symptomatology accompany[ies] the distress." Francis v. Am. Bankers Life Assurance. Co. of Fla., 861 A.2d 1040, 1046 (R.I. 2004).

Physical manifestations of emotional injury include symptoms such as severe nightmares, severe headaches, occasional suicidal thoughts, sleep disorders, reduced libido, fatigue, stomach pains, loss of appetite, or the inability to socialize or function normally. Perrotti v. Gonicberg, 877 A.2d 631, 638 (R.I. 2005). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead specific physical symptoms caused by the alleged emotional distress – conclusory allegations will not cut it. Rocha v. Wells Fargo Bank, N.A., C.A. No. 16-600 WES, 2018 WL 1934191, at *6 (D.R.I. Apr. 24, 2018) ("conclusory allegations, and Plaintiff's failure to plead specific physical symptoms caused by his alleged emotional distress, are not enough to move forward on his intentional infliction of emotional distress claim"); DeLucca v. Nat'l Educ. Ass'n of R.I., 102 F. Supp. 3d 408, 418 (D.R.I. 2015) ("As a matter of law, unsubstantiated claims of 'embarrassment' and 'significant distress,' with no further factual support, are insufficient to support [a party's] claims under the pleading standard set forth by the Supreme Court in [Iqbal]."); Lisnoff v. Stein, 925 F. Supp. 2d 233, 241-42 (D.R.I. 2013) ("complete absence of any assertions . . . [that] alleged conduct resulted in physical symptomatology –

13

particularly where [plaintiff] was given an opportunity to flesh out the facts on which her claims were based – cannot pass muster on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6))").

Count II utterly lacks any allegations of specific physical symptoms. While it somewhat hyperbolically accuses Tropical of engaging in unspecified conduct that was "atrocious and egregious" and "beyond all possible bounds of decency," ECF No. 1 ¶¶ 36-37, the operative paragraph is conclusory, pleading only that Mr. Disla suffered "severe emotional distress." Id. ¶¶ 35, 39. Count I adds the conclusory allegation that Mr. Disla's distress resulted in "physical and emotional manifestations," id. ¶ 31, but this is far from sufficient for Twombly/Iqbal plausibility. Rocha, 2018 WL 1934191, at *6 (conclusory allegations that plaintiff has debilitating health issues not enough to cure pleading that fails to allege specific physical symptoms).

I find that Count II fails to state a claim and recommend that it be dismissed.[10]

## IV. CONCLUSION

Based on the foregoing, I recommend that Tropical's motion (ECF No. 11) to dismiss Counts I and II be granted.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to

---

[10] While Tropical's motion to dismiss Count II focused only on Mr. Disla's failure to plead physical symptoms, it is worth noting the Count II also fails because it provides no facts to plausibly suggest that Tropical engaged in conduct that may be considered outrageous or extreme. The closest is the extremely serious (if true) allegation, pled on information and belief, that Tropical I witnesses were bribed; however, with Tropical I dropped voluntarily, it is difficult to see how such conduct would have inflicted severe emotional distress on Mr. Disla. I alternatively recommend dismissal of Count II based on this deficiency.

14

appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 3, 2019